# MARY JOHNSON y. ST. LOUIS & SUBURBAN RAILWAY COMPANY, Appellant.

## Division One, March 18, 1903.

1. **Negligence: STREET CAR: SPECIFIC AND GENERAL ALLEGATIONS.** The petition charged that the accident was caused by the defective running gear of the car and the rapid running of the car around the curve where the accident occurred. The evidence shows that the car so rocked as to cause the motorman to call the attention of an inspector to that fact more than a mile away from the place of the accident, and that the inspector on examination found the flange of a wheel to be defective, and cautioned the motorman and conductor to run the car carefully and slowly, but that they ran it around the curve at the usual rate of speed, which was eight or nine miles an hour. *Held*, that the evidence made out a prima facie case for plaintiff, whether the allegations of negligence be considered specific or general.

2. ———: **CAUSE OF ACCIDENT: OPINION OF WITNESSES.** It is for the jury to determine the cause of the accident, and if the defendant declines to reveal that cause, the opinion of those having the car in charge and of the inspector and master mechanic that it was perfectly safe to run the car with a small chip out of a flange of a wheel, is immaterial, and is not sufficient to support a demurrer to the evidence.

3. ———: **GENERAL INSTRUCTION CURED BY SPECIFIC.** An instruction given for plaintiff which predicates his right to recover for general negligence, is cured by instructions given for defendant which limit the right to the specific negligence charged in the petition.

4. ———: **SYMPATHY FOR PLAINTIFF: INSTRUCTION.** The jury are to be guided solely by the evidence and should in no way be influenced by sympathy. But it does not 'follow that a party is entitled as a matter of right to have such an instruction. Such an instruction is proper only under exceptional circumstances after the jury have shown undue regard for or interest in one party and have evinced in some way a disregard of their sworn duty.

Appeal from St. Louis City Circuit Court.—*Hon. Jno. A. Talty*, Judge.

AFFIRMED.

*McKeighan & Watts* and *Robert A. Holland, Jr.* for appellant.

(1)   The court erred in refusing to give the instruction in the nature of a demurrer to the evidence offered by the defendant at the close of plaintiff's evidence in chief, and again at the close of all the evidence. The plaintiff in this case alleged that the derailment of the car was due to a particular cause, but failed to introduce any evidence showing or tending to show that defendant had any knowledge of said cause, or means of knowledge thereof, in time to avoid the injury to plaintiff.   Under this form of pleading it was necessary for plaintiff to establish by evidence not only the existence of a defect, but knowledge or means of knowledge on the part of defendant.   Feary v. Railroad, 162 Mo. 75.   (2)   The court erred in giving instruction 1 at the request of plaintiff, said instruction submitting to the jury the question as to whether or not defendant had any knowledge or means of knowledge of the said defect.   Said portion of said instruction was erroneous, because there was no evidence upon which to predicate it.   Stone v. Hunt, 114 Mo. 66; State v. Hoke, 102 Mo. 410; Evans v. Interstate Co., 106 Mo. 594; State v. Brown, 145 Mo. 680.   (3)   The court erred in giving instruction 2 at the request of plaintiff, said instruction authorizing a verdict if the jury found that there was any negligence on the part of defendant, instead of limiting the deliberations of the jury to the particular negligence alleged.   Chitty v. Railroad, 148 Mo. 64; McMenomy v. Railroad, 135 Mo. 440; Waldheir v. Railroad, 71 Mo. 314; McCarthy v. Hotel Co., 144 Mo. 397. (4)   The court erred in giving instruction 3 at the instance of plaintiff, said instruction stating, in effect, that if the plaintiff has proved the derailment, she has thereby made out a prima facie case of negligence against defendant.   This instruction is erroneous because plaintiff in her petition saw fit to allege that the derailment was due to a particular cause.   It is incum-

bent upon her, therefore, to prove this particular cause by a preponderance of evidence. Feary v. Railroad, supra. (5) The court erred in refusing to give the instruction which informed the jury that they must be guided solely by the evidence in the case and the instructions of the court, and must be in no way guided by sympathy for the plaintiff. Said instruction correctly stated the law.

*D. D. Holmes* and *B. J. Klene* for respondent.

(1) The court properly refused to give the instruction in the nature of a demurrer to the evidence offered by defendant at the close of plaintiff's evidence in chief, and again at the close of the evidence, there having been evidence given to sustain the allegations of plaintiff's petition. (2) Instruction 3, given at the instance of plaintiff, correctly states the law of this case. Och v. Railroad, 130 Mo. 51. (3) The court properly refused instruction D, asked by defendant, for the reason that said instruction in its first part would have been superfluous, in that it would have told the jury that they must do what in effect they had already been sworn to do, i. e., give the parties a fair trial. In its second part said instruction did not correctly state the law. Said instruction told the jury they must in no way be guided by sympathy for the plaintiff. It is too narrow, in that it includes but one of the parties.

MARSHALL, J.—This is an action for damages for personal injuries received by the plaintiff on November 17, 1901, near Raymond avenue in St. Louis, while she was a passenger on one of defendant's cars, in consequence of a derailment of the car. There was a verdict for the plaintiff for eight hundred dollars, and the defendant appealed.

The negligence charged in the petition is as follows:

"Plaintiff states that on November 17, 1900, plaintiff was riding as a passenger on a west-bound car belonging to defendant; that at said time the running-gear of said car, that is to say, the wheels, axles and other machinery, by means of which the said car ran along the said track, were defective, and out of order, and unfit for the purpose of supporting the said car on the said track; that the said car was, at the said time, by reason of the said defective running-gear, in a dangerous and unsafe condition, and unfit for the purpose of carrying passengers safely along said track; that the defendant, its officers, agents and servants, in charge of the said railway, and in charge of and operating said street car, knew, or by the exercise of reasonable care and diligence could have known, that the said running-gear of the said car was then and there defective and out of order, and that the said car was in a dangerous and unsafe condition, and unfit for the purpose of carrying passengers safely along said track; that though the defendant and its said officers, agents and servants knew, or by the exercise of reasonable care and diligence could have known, of the unsafe condition of the said car as aforesaid, they permitted the plaintiff, who was ignorant of the said unsafe condition, to remain on the said car without warning her of the danger of riding on the said car; and though the defendant and its said officers, agents and servants knew, or by the exercise of reasonable care and diligence could have known, of the defective running-gear as aforesaid, they carelessly, recklessly and negligently ran the said car along the said track, and into the said curve aforesaid, at a high rate of speed; that as the said car approached the said point aforesaid, that is to say, when the said car was at or near the intersection of Cabanne avenue and the said railway track, and between said Cabanne avenue and Raymond place, and on said curve of said track, because of the said defective running-gear and because of the want of care and precaution on the part of the defendant, its officers,

agents and servants in the premises, the said car left the said track, and after running about fifty feet along the ties and ground the said car ran against a large pole, erected about six feet to the north side of said track, striking the said pole with great force and violence.''

The answer is a general denial.

The case made is this:

The plaintiff became a passenger for hire on the defendant's car, at the corner of Sixth and Locust streets. The car proceeded safely and without trouble until it arrived at a point in West Morgan street, near the West End postoffice, where the tracks leave the public street, and run, on a curve, onto the defendant's private right of way. In turning the curve the car ran roughly, bumped along, and created the impression that it was off the track. The car was stopped and the conductor and motorman examined the car. One of the passengers (James E. Crabb, who was a witness for the plaintiff) asked the conductor what was the matter, and he replied ''that the flange of the wheel was broken.'' This witness further testified that ''one of the wheels had apparently got off the rail; looking out I could see that it was bulging over the rail, but it was not sufficiently so to prevent the motion of the car, and the motorman said 'she will go' and she went.'' The defendant complains bitterly because the witness was allowed to testify to what the conductor and motorman said about the car at that time. The car was started and after running about fifty feet it was stopped and further examination was made. Then it was started again, and it ran with a ''jumping motion,'' an ''irregular movement,'' ''which became marked at curves,'' with a ''rocking motion,'' as the several witnesses described it. When the car reached Sarah street it was stopped, the conductor and motorman got off and reported to an inspector the condition of the car. The three examined it, and the inspector said to the motorman and conductor, ''Take her carefully,'' ''Take it slow.'' The

car proceeded at the usual speed until it reached Raymond avenue, and, as the motorman testified, "when they went around the curve at Raymond avenue the car was going eight or nine miles an hour, just about the usual rate at which cars run around curves." The "irregular movement" of the car became very marked as it was turning the curve, and continued for about fifty or sixty feet, when the car left the track, ran about a car-length on the cross-ties, then left the ties and ran into a fifteen inch telegraph pole that stood about six feet from the track and broke it down, and the plaintiff was injured.

The inspector who examined the wheel at Sarah street testified that he found a chip in the flange of one of the front driving wheels, about an inch and a half long and about an eighth of an inch thick; that such a chip would cause a roughness in the movement of the car in going around a curve, but that such a chip would create no danger of derailment, and he decided that the flange was large enough to hold the car on the track even with such a chip in it; that he rubbed the wheels off with his hand and looked at it and did not test it with a hammer as they commonly do when a car is in the shed; that the wheel seemed to be perfectly sound, there was no evidence of any crack in it, and it was in perfect shape except for the chip. The master mechanic of the defendant testified that he visited the scene of the accident and found about seven inches of the flange broken out, and that the pieces of the flange were found in the immediate vicinity; that there was no sign of an old crack in the pieces that were found or of rust or any defects that would lead to a break; that such a chip in a wheel as that described would not create any danger of the car running off the track; that if the car was run at a high rate of speed such a chip would cause a slight jar, but in running slowly it would not be felt; that he had seen hundreds of cars operated with a chip of that size out of the wheel. This witness testified on cross-exami-

nation "that if the chip was large enough to cause the car to rock in such a shape as to cause the motorman to call the inspector's attention to it, he would think it was dangerous." He further testified that he had found some of the pieces that had broken out of the flange of the wheel, fifty or one hundred feet back of the telegraph pole, and that those pieces could not have been broken off of the wheel by running along the cross-ties.

It was further shown that from Sarah street to the curve where the accident occurred was a little over a mile and a quarter.

## I.

The refusal of an instruction for a nonsuit is assigned as error. The point of this contention is, that the plaintiff assigned specific negligence and failed to prove it. That is, that the plaintiff pleaded that the accident was caused by the defective running-gear on the car, and the rapid running of the defective car around the curve, and that there is no evidence to show that such was the cause of the accident. And the rule laid down in Feary v. Railroad, 162 Mo. 75, is invoked.

This position is untenable. The negligence charged in this case can not accurately be said to be specific. The petition charges that the "running-gear, that is to say, the wheels, axles and other machinery, by means of which the said car ran along the said track, were defective, and out of order, and unfit for the purpose of supporting the said car on the said track," and that although the defendant knew, or by the exercise of ordinary care could have known, of such defective running-gear, it "ran the said car along the said track, and into said curve at a high rate of speed." The motorman says he ran around the curve at the usual rate of speed, which was eight or nine miles an hour.

The plaintiff's evidence showed that the conductor said that the flange on the wheel was broken; that the inspector at Sarah street found a chip out of the flange

on one of the front driving wheels, and told the motorman to "take her carefully" or "take it slow;" that the car was run for a mile and a quarter at the usual speed, and was running around the curve, at the usual speed of eight or nine miles an hour, when it left the track; that from the time the trouble was first discovered at the curve from Morgan street to the defendant's private right of way, the car ran with a jumping or irregular or rolling or bumping movement; and that from Sixth and Locust street to said point on Morgan street, the car ran smoothly and without any such motion.

This evidence made out a prima facie case in favor of a passenger for hire against a carrier, whether the allegations of the petition be construed to be general or specific. There were abundant facts shown by the plaintiff's evidence for the jury to find that the defendant was guilty of negligence in running the car beyond Sarah street, and that the motorman was negligent in running the car at the usual rate of speed—especially around the curve—after the inspector at Sarah street had told him to run carefully or slowly. Such evidence is sufficient to authorize the jury to draw the inference that the car left the track because of the defects in the flange of the wheel, and because the car was run around the curve at the usual rate of speed at which sound cars are run around that curve.

The fact that the defendant's witnesses—the inspector and the master mechanic—testified that in their opinion it was perfectly safe to use the car with the flange in such condition, is immaterial when considering whether the case should have been taken away from the jury at the close of the plaintiff's evidence—or in fact at any time. For such opinions might or might not be accepted as reasonable or sound by the jury, and in spite of them the jury was charged with the duty of determining the cause of the accident, and the defendant wholly failed to enlighten the jury as to the cause of the accident, if it knew, or to advance any theory whatever

for the accident.    It contented itself with the said opinions of its experts.    And the physical facts and painful results bore voiceless but persuasive evidence that the opinions were not reliable.    But aside from this, while the master mechanic said he had seen hundreds of cars operated with chips out of the flanges on their wheels as large as this, and that he considered it safe to run this car, he nevertheless testified, on cross-examination, that if the chip in a flange was "large enough to cause the car to rock in such a shape as to cause the motorman to call the inspector's attention to it, he would think it was dangerous."    And the evidence was that the chip in this flange caused the car to rock, and that the motorman called the inspector's attention to it, and after examining it the inspector told the motorman to go carefully, and he did not do so.

So that even if all this evidence had been before the court when it passed on the instruction asked for a nonsuit, the court would have been compelled to hold that the plaintiff had made out a case that entitled her to go to the jury, and this, too, whether the negligence charged be construed to be general or as specific as it is possible for any one to construe it.    There is absolutely no evidence in the case from which the jury could find that the accident was caused by any other means or was attributable to any causes except those assigned in the petition.

The instruction for a nonsuit was, therefore, properly refused.

## II.

The first instruction given for the plaintiff is complained of.    The instruction faithfully follows the allegations of the petition and limits the right of the plaintiff to recover to a finding that the accident was caused in the manner and by the means charged in the petition. The objection is that there was no evidence to support the instruction.    What has been said in regard to the

instruction for a nonsuit applies with equal force to this objection. The same is true as to the objections urged to the plaintiff's second instruction, which is nothing more than the complement of the first instruction.

### III.

The third instruction given for the plaintiff is assigned as error, on the ground that it predicates a right to recover for general negligence, whereas the petition limited the right to recover to specific negligence. As already pointed out, this is not the correct interpretation of the petition. The verdict is responsive to the issues joined, and the evidence shows that the accident was caused by the acts of negligence charged, and there is nothing in the case from which the jury could have found that the accident was attributable to any other cause.

And whatever generality the instruction complained of contained was fully cured by the first instruction given for the plaintiff, and the ninth, tenth and eleventh instructions given for the defendant, which limited the plaintiff's right to recover to the specific negligence charged in the petition, and told the jury that the plaintiff was not entitled to recover merely because there was an accident and she was hurt. Those instructions cover the case and speak for themeslves. They are as follows:

Plaintiff's instruction number 1:

"If the jury believe and find from the evidence in this case that on or about the 17th day of November, 1900, plaintiff was a passesnger on a west-bound car of defendant; that on said date while rounding a curve between Cabanne avenue and Raymond place in a northwestwardly direction, the car on which plaintiff was a passenger was being run at a high rate of speed, and that the said car left or jumped the track and ran across the ties and along the ground for a space of about

fifty feet, and against a large pole, with great force and violence, causing plaintiff's injuries described in the testimony; and that the said car left or jumped the track by reason of the flange on one of the wheels of said car being in a worn or broken condition, which rendered it unsafe and dangerous as a vehicle, for the transportation of passengers, and that that condition, if you believe and find from the evidence it was in such condition, was known to the defendant, or its agents, servants, and officers in charge of said car and railroad, or could by the exercise of reasonable care and diligence have been known to them a sufficient length of time prior to said car's leaving the track to have prevented it so doing, if you believe and find these facts, then, and in that event, your verdict should be for plaintiff.''

Defendant's instructions:

''No. 9. The court instructs the jury that the plaintiff can in no event recover in this case unless you believe from the evidence that she was injured, and that her injuries were directly due to negligence on the part of defendant's servants, and if you believe from the evidence that the injuries sustained by plaintiff were not due to negligence on the part of defendant's servants, but were due to mere accident or misadventure, then, and in that case, your verdict must be for the defendant.

''No. 10. The court instructs the jury that plaintiff is not entitled to recover in this case merely because one of defendant's cars was derailed by the breaking of the flange of a wheel. That if you believe from the evidence that the derailment of the car in question at the curve near Fairmont avenue was due solely to the breaking off of pieces of said flange immediately in said curve, and that said breaking could not be foreseen or anticipated upon close examination by a competent inspector, then, and in that case, the defendant was guilty of no negligence in connection with the breaking of such flange, and you will find your verdict for the defendant.

"No. 11. The court instructs the jury that if you believe from the evidence that when defendant's car reached Sarah street it was examined by an inspector who found that a small piece of flange of one wheel had chipped out; and if you further believe from the evidence that there was no danger of derailing on account of such portion of the flange being out of said wheel; and that it was impossible for defendant's said inspector to discover by examining said wheel any defect that would lead a competent inspector to suspect or infer that other pieces of said flange would break out during the running of said car in its ordinary course to De-Hodiamont; and if you further believe from the evidence that after examining said car the inspector told the motorman to proceed with said car, and that thereafter when said car was going around a curve at Cabanne avenue other and larger pieces of such flange broke out, and that thereby said car was derailed, then and in that case the defendant was guilty of no negligence and your verdict must be for the defendant.''

## IV.

The error assigned that the court directed the jury that nine of their number could return a verdict, is answered by the decision in Gabbert v. Railroad, 171 Mo. 84.

## V.

Lastly, it is urged that the court erred in refusing an instruction asked by the defendant that the jury must be guided solely by the evidence and should in no way be governed by sympathy for the plaintiff—nothing is said about sympathy for the defendant.

It goes without saying that the jury must be guided solely by the evidence and not be influenced by sympathy. But it does not follow that a party litigant is entitled as a matter of right to have such an instruction

given to the jury.   It is equivalent to saying to the jury
that you are sworn to try the case according to the evi-
dence adduced, and you must do your duty, when noth-'
ing had transpired to indicate that jurors were unmind-
ful of their sworn duty or that they could be fairly sus-
pected of an intention not to do their duty.   Such an
instruction is only proper under exceptional circum-
stances after the jury have shown undue regard for or
interest in a party litigant and have evinced in some
way a disregard of their sworn duty.   If the case is
tried before the court and such an instruction is asked,
the judge would have just cause to feel insulted, and the
same is true as to any well-behaved jury.   The fact
that such an instruction was refused in this case did
the defendant no harm, for there is nothing in the record
or the damages assessed that even tends to show that
the jury was influenced by sympathy for the plaintiff in
the slightest regard.   This being true it is the duty of
this court not to reverse the judgment.'   [Sec. 865, R.
S. 1899.]

Viewed from any standpoint, it is not perceived
how the verdict could have been other that it was, or for
any less sum than it was.   The judgment is for the right
party, and is affirmed.   All concur.