EDITH B. COPELAND, APPELLEE, V. OMAHA & COUNCIL BLUFFS STREET RAILWAY COMPANY, APPELLANT.

FILED MARCH 13, 1915.     No. 17929.

1. **Appeal: FINDINGS: EVIDENCE.** On a controverted question of fact, the finding of the jury will not be disturbed if there is evidence tending to support it, unless it is clearly wrong.

2. **Carriers: INJURY TO PASSENGER: NEGLIGENCE: PRESUMPTION.** When it appears in an action against a common carrier for personal injury caused by the negligence of the carrier that some defect in the appliances of the carrier, or some act of its employees in the conduct of its business, contributed to the accident which caused

the injury complained of, a presumption of negligence on the part of the carrier arises, and, unless there is evidence against the presumption, it will be sufficient to establish the allegation of negligence of the carrier.

3. **Trial:** INSTRUCTIONS. The defendant is not entitled to an instruction that the jury should not be governed by sympathy for the plaintiff, nothing having transpired to indicate that the jurors were unmindful of their sworn duty.

4. ——: ——: DISCRETION. The giving of such an instruction is within the discretion of the trial court.

APPEAL from the district court for Douglas county: ABRAHAM L. SUTTON, JUDGE. *Affirmed.*

*John L. Webster, W. J. Connell* and *William Ross King,* for appellant.

*Wymer Dressler, contra.*

HAMER, J.

This action was brought by the plaintiff in the district court for Douglas county, Nebraska, to recover damages for personal injuries alleged to have been sustained while the plaintiff was a passenger on a street car in Omaha on the 11th day of November, 1907. The plaintiff claims that the injury was sustained because of the careless and sudden starting of the car while the plaintiff was alighting therefrom. The basis of the plaintiff's claim is negligence upon the part of the street car company. The case was tried before Judge Sutton and a jury. There was a verdict for the plaintiff, assessing her damages at $2,000, and on this verdict a judgment was rendered, from which an appeal is taken to this court.

The plaintiff, Edith B. Copeland, claims to have been injured while alighting from one of the cars of the defendant company. She claims that she sustained a fracture of the coccyx by reason of the sudden starting of the car while she was in the act of alighting at Fourteenth and Douglas streets, Omaha. She claims to have boarded the car at Seventeenth and Nicholas streets. She was on her way to the Burlington headquarters. It was necessary for

her to alight from a car south-bound on Fourteenth street at Dodge street, and to transfer to a car going east on Dodge street, known as the "Dodge" car. Mrs. Copeland claims that the car known as the "South Omaha" car, from which she was in the habit of transferring at Fourteenth and Dodge streets to the Dodge street car, stopped on this particular morning at the southwest corner of the intersection. She says that she generally left her home on the 7:30 A. M. car, which takes about 10 to 15 minutes to get to Fourteenth and Dodge streets, and that it would not have been more than 8 minutes at the most either way from 7:45 A. M. when she alighted that morning from the South Omaha car at Fourteenth and Dodge streets. She further claims that she got to work that morning by 8 o'clock at the auditor's office in the Burlington headquarters at the corner of Tenth and Farnam streets. She testified that there were several persons, men and women, who alighted from the car at the time she got off, and that she was the last person to get off; that as she was in the act of getting off the conductor rang the bell and caused the car to start forward. She claims that she was stepping from the lower step at the rear of the car to the street; that she released her hand just as the car started; and that the sudden movement of the car caused her to fall and to strike the end of her spine upon the edge of the car steps. In her testimony she claims that the conductor paid no attention to her, except to laugh at her, and that he went on without stopping his car. She appears to have been unable to get the number of the car. She could not remember whether either of the four conductors brought before her at the trial was the conductor who had charge of the car. A gentleman passenger came to her assistance, but she did not know this gentleman, and has not since seen him. She testified that she arose to her feet and proceeded to the southeast corner of the intersection, where she boarded an east-bound car, and thereafter alighted at Tenth and Farnam streets, from which she proceeded directly to the auditor's office in the Burlington headquarters building. She worked as usual that day.

Copeland v. Omaha & C. B. Street R. Co.

She sat at her desk, and at night took a car and transferred at Fourteenth and Dodge streets. Plaintiff testified that prior to her injury she was not nervous; that she did not suffer from pains in her back; that she did not have headaches; that she did not have any shooting pains up and down her spinal column; that she had no ailments of the back and spine. She testified that after she received the injury she suffered in that way; that she often had headaches; that she had shooting pains up and down her spine all the time; that she could not sit comfortably, except on one side, and that if she attempted to sit straight she could not get up; that her hips were affected by the changes of the weather, and that she had pains in her hips whenever the weather changed; that she had soreness along her spine; that she had pain all the time; that the pain crept up the spine from the place of injury. She seems to have been unable to sleep well at night, and her husband would massage the muscles with alcohol; that he did this for the purpose of relieving the pain; that she had not been free from pain since she received the injury up to the day she testified. She is shown to have one child.

Dr. Alonzo E. Mack, her physician, testified that he had been practicing medicine in Omaha for 16 years; that he had known the plaintiff for 20 years; that when he first became acquainted with her she was 7 or 8 years old; that he had been her physician 16 years; that he was acquainted with her general physical condition prior to November 11, 1907, and that her condition was good before that time. He then testified that in the latter part of December, 1907, she came to his office and complained of a pain in her back and referred to the lower part of the spine; that he examined her back and lower part of her spine, and found a fracture of the coccyx. He then describes the coccyx as composed usually of four small bones, called vertebrae, set at the end of the spine; that the usual length is from three to four inches; that these small vertebrae may be three, or, four or five, but four is the usual number. He then further describes the coccyx as being slightly curved with the point forward; that in the case of the plaintiff

it was pointing directly forward, and that it was fractured at the middle joint, and therefore, that there were two vertebrae dislocated or broken off. He then testified that the coccyx serves as an attachment for muscles and is a protection to the nerves; that there are important nerves in the vicinity; that these nerves come to a sort of a center at the coccyx, and that a fracture of the bones causes pain; that, if the support for the muscles which control the bowels should be broken, every movement of the bowels would cause pain to the patient; that the natural and necessary result of a fracture of the coccyx would be pain more or less constant and continuous; that it would be a constant irritant, and that its effect would become best marked as time went on; that unless one should be informed by some competent person he might not know that the coccyx bone was fractured, and might not at once rush to a physician. He testified that he had observed Mrs. Copeland's physical condition from time to time since 1907, and that she was nervous; that she was more nervous at the time of the trial than she was a year prior to that time; that she was growing more and more nervous; that her fractured coccyx bone remains the same, and that the ultimate result must be "a physical and nervous breakdown." "Q. What do you say as to whether Mrs. Copeland's present condition—that is, her fractured coccyx bone—is a temporary or permanent injury? A. Permanent." On cross-examination he testified that the plaintiff was married; that she had the care of a little child at night and also in the day time, and that this, with her present condition, would be one of the natural contributing causes to her nervousness; that nervousness and nervous collapse are so frequent that a large number of specialists have for years engaged in the special practice in Omaha; that besides these specialists every reputable physician and surgeon has cases of this kind; that the witness himself had quite a number of these cases at the time he testified. The witness could not tell how long the injury had occurred to the plaintiff before she came to his office. He did not seem to think that it would be difficult to treat the

plaintiff for the injury, and that treatment could be an efficient remedy. "Q. Would you say that her condition, as induced by the fractured coccyx, is at this time aggravated, or not? A. Yes, sir." He further testified that after a number of years the patient would have decreased vitality and loss of resistance, and that there was an element of greater danger now than at the time the injury was received. The husband of the plaintiff testified that many times he massaged Mrs. Copeland with alcohol.

It is the contention of the defendant that the injury claimed by the plaintiff never occurred. It is also claimed that the court erred in excluding the rule or custom of defendant's employees in reporting accidents. We are unable to see that there was any prejudice to the defendant in this ruling. The particular conductor in charge of the car would not know whether the plaintiff was injured, unless she complained then and there of the injury. Merely slipping and falling in the snow would not of itself be a serious matter in the mind of the conductor, unless attended with apparent serious consequences. That the conductor made no report was probably due to the fact that he did not consider the plaintiff was injured. In any event the ruling of the court was not a bar to any fact sought to be proved by the defendant.

It is claimed that the court erred in refusing to give instruction No. 4, requested by the defendant, cautioning the jury against being influenced by sympathy for the plaintiff. It is claimed that there was no instruction of this character in the court's charge, and therefore that the failure of the court to give an instruction upon this point was prejudicial. We think this matter was one of discretion. It does not follow that the jury were about to be improperly influenced because of the testimony of the plaintiff and of witnesses whose testimony tended to corroborate her. "The trial judge 'is in a position to observe and know whether the situation is such as to render such cautionary instruction necessary to a due administration of justice, and if, in his opinion, they are not, his refusal to give them cannot ordinarily be assigned for error.' " Blashfield, In-

structions to Juries, sec. 344.  See, also, *Birmingham Fire Ins. Co. v. Pulver,* 126 Ill. 329 ; *Central Branch Union P. R. Co. v. Andrews,* 41 Kan. 370.  The parties are certainly not entitled to a cautionary instruction of this character, in the absence of special circumstances connected with the trial which would make such instruction essential to a fair trial.  The defendant is not entitled to an instruction that the jury must be guided solely by the evidence, and should not be governed by sympathy for the plaintiff, nothing having transpired to indicate that the jurors were unmindful of their sworn duty.  *Johnson v. St. Louis & S. R. Co.,* 173 Mo. 307.  We are unable to see anything in the case of a pitiful character or which would be calculated to excite unusual sympathy in the jury.  There was, so far as we are able to see, no abuse of discretion on the part of the trial court because he failed to give such an instruction, or the instruction requested.

The next point urged by the appellant is that the court did not give sufficient prominence to the contention of the defendant that the plaintiff's story was false, and that no such accident had ever occurred.  We are unable to see any error upon the part of the trial court because of anything shown in this contention.  When the plaintiff has shown that she was a passenger on the defendant's street car, and that she was injured by the sudden starting of the car while in the act of alighting therefrom, such a situation would seem to raise the presumption that the defendant was negligent.  In *Lincoln Traction Co. v. Shepherd,* 74 Neb. 374, it is said in the body of the opinion: "When a passenger is injured through some defect in the appliances of the carrier, or some act that is done by its employees in the conduct of the business, a presumption of negligence on the part of the carrier arises, and this presumption is sufficient, in the absence of any other evidence upon the subject, to supply the proof demanded of the plaintiff upon that point and establishes *prima facie* the negligence of the carrier."

The serious contention of the defendant would seem to be that the accident never happened.  The plaintiff has

testified that it did happen. That matter has been submitted to the jury. They have found against the contention of the defendant. Apparently the defendant had a fair trial. We are unable to see any good reason for disturbing the verdict. The judgment of the district court is

AFFIRMED.

Fawcett, J., not sitting.