# MARCH, 1939.

Bessie H. Fawkes, Respondent, v. National Refining Company, a Corporation, and Earl Howell, Appellants.—130 S. W. (2d) 684.

Kansas City Court of Appeals.   June 19, 1939.

434

*Ringolsky, Boatright & Jacobs* for appellant.

. *Luther W. Adamson* and *Martin J. O'Donnell* for respondent.

BLAND, J.—This is an action for damages for personal injuries. Plaintiff recovered a verdict and judgment in the sum of $2500 and, the defendant, National Refining Company, has appealed. This is the second appeal in the case. [See Fawkes v. National Refining Co., 108 S. W. (2d) 7.] The present appeal was taken to the Supreme Court but that court has transferred the cause here.

The facts show that one, Stinnett, was the owner and operator of a truck against which the plaintiff's husband drove his truck on the night in question, resulting in injury to the plaintiff, who was a passenger in the latter's truck. Stinnett with a friend, Charles Buckley, had been to a picture show on Van Horn Road just west of a filling station owned by the defendant, National Refining Company, and being operated for it by the defendant, Earl Howell. Stinnett and Buckley parked the former's truck near the picture show. When the show was over they came out thereof but were unable to start the motor. Thinking that the truck was possibly out of gasoline, they pushed it westward on Van Horn Road and under the canopy of the filling station in question, where they bought two or three gallons of gasoline of Howell. After completing the purchase Stinnett remarked to Howell, that he could not get his truck started on account of the battery being low and asked Howell to give him a push. Howell complied and the truck rolled off of the filling station property down to Hardy Avenue. Howell then returned to attend to his duties about the station, but seeing that Stinnett and Buckley were still trying to push the truck, Howell went over to the west side of the filling station property where he kept his own private car parked, started it and drove to the stalled truck, stopped in front of it and pushed it back on to the filling station property and then pulled away from it. He sat in his car for a few minutes watching Stinnett and Buckley push it again. This time it went toward Van Horn Road headed in a eastwardly direction. Howell, seeing that Stinnett and Buckley were having some difficulty in pushing the truck alighted

from his car and walked toward them, catching up with them about the time they got to the highway, and started to push on the back of the truck. Thus, with the effort of the three, the truck was pushed out on to Van Horn Road, the intention being to move it a short distance east on the highway where there was a slight incline. It was thought that the truck would roll down this incline and the motor would be started by putting it in gear. When the truck reached Van Horn Road Stinnett was pushing on the left side of the truck near the driver's wheel so as to guide the same. Howell testified: "I first pushed from behind, the rear of the truck, and when it got straightened up I walked around to the side," and pushed on the right-hand side and near the rear of the truck. About this time the truck in which plaintiff was riding came from the west and crashed into the rear end of the Stinnet truck.

There is a dispute in the evidence as to whether the Stinnett truck had a tail light and, if so, whether it was lighted.

One of the grounds of negligence alleged in the petition was that the defendant, Howell, knew or, by the exercise of ordinary care, could have known that the Stinnett truck had no tail light, yet he pushed and propelled the truck, without such tail light, from the filling station at and along Van Horn Road.

Complaint is made of the giving of plaintiff's Instruction No. 1. This instruction told the jury that if they found that Howell was the agent of his co-defendant and that he "negligently assisted in pushing the Stinnett truck mentioned in evidence without a red light on the back thereof facing to the rear" from the grounds of the filling station, over and along the highway in question; that there was no red light on the back of the Stinnett truck facing to the rear; and that as a direct result of the absence of such light the truck in which plaintiff was riding collided with the Stinnett truck and plaintiff was injured, their verdict should be for the plaintiff.

Defendant insists that the giving of this instruction was error for the reason that it wholly ignores the allegation contained in the petition that the defendant *knew or, by the exercise of ordinary care, could have known* of the absence of such a light; that although the instruction requires the jury to find that the defendant "negligently" assisted in pushing the Stinnett truck without a red light on the back thereof it does not submit to the jury what such negligence consisted of and permits the jury to evolve any theory of negligence it might see fit regardless of the negligence upon which defendant was called upon to defend in view of the allegations in the petition; that the instruction submits statutory negligence, to-wit, a violation of section 7778, Revised Statutes 1929, requiring all motor vehicles to display one red light mounted at the back directed to the rear, etc.; that the duty imposed by the statute is upon the owner and operator of the motor vehicle and not upon the defendants who were under no statu-

tory duty to see that the motor vehicle was equipped with a rear light; that they would be liable only if they knew or, by the exercise of ordinary care, could have known that the Stinnett truck was not so properly equipped; that the petition alleges common law negligence, while the instruction submits statutory negligence.

The ground of negligence alleged in the petition was that defendants assisted in pushing the Stinnett truck along the highway without a rear light on said truck when they had either actual or constructive knowledge that said truck had no such light.

The instruction does not submit such knowledge except in the use of the word "negligently." Assuming that the use of that word is a submission of the matter too broadly, nevertheless, we do not think that the instruction can be held to be materially erroneous for the reason that the evidence, without dispute, shows that defendants had knowledge of the conditions as to the presence or absence of a rear light on the truck and the jury, under the instruction, must have found that it had no such light. While there is a dispute in the testimony as to whether the Stinnett truck had a rear light and, if so, whether it was lighted at the time, there is no dispute that if the truck had no lighted rear light Howell was fully aware of the fact. In appellant's brief it is stated: "Howell, the filling station attendant, testified that the truck did have a tail light." Under other testimony the jury could have found that it had no lighted rear light, regardless of this testimony of Howell, yet, believed his testimony insofar as it shows that, whatever the condition was in reference to the light, Howell knew it, as his testimony shows he was aware of the condition. There is no dispute in the evidence as to Howell's knowledge and he was defendant's witness. Indeed it would be difficult to see how Howell could not know that there was no lighted rear light on the Stinnett truck if, in fact, there was none, and the jury so found, in view of the fact that he was around that truck for sometime prior to the collision and, for a while, *was pushing upon its rear.* The defendant, National Refining Company, was acting through Howell, and whatever Howell knew, it knew.

In addition to this, defendant had the court give the jury two instructions, one defining "negligence" and "ordinary care," and the other telling the jury that, even though they found that the Stinnett truck had no lighted tail light thereon at the time in question, if they found that Howell, while exercising ordinary care, did not know that the truck had no lighted tail light thereon, their verdict would be in favor of the defendant, National Refining Company.

Of course, plaintiff's instruction covers the entire case and directs a verdict. Therefore, it was necessary to submit to the jury every fact necessary to be found in order for plaintiff to recover. It is well settled that, where such instruction leaves out an essential fact, it is not cured by an instruction for the defendant requiring the finding

of such fact. [McDonald v. K. C. Gas Co., 332 Mo. 356.] However, this rule has no application where all the essential facts are submitted in plaintiff's instruction but some of such facts are submitted with too much generality, it being equally well settled that the mere generality of an instruction may be cured by another instruction which limits plaintiff's right of recovery to the specific negligence upon which his action is based. [LeMay v. The Mo. Pac. Ry. Co., 105 Mo. 361; Deweese v. The Meramec Iron Mgn. Co., 128 Mo. 423; Johnson v. St. Louis & Sub. Ry., 173 Mo. 307; Nephler v. Woodward, 200 Mo. 179; Deschner v. St. Louis & M. R. Ry. Co., 200 Mo. 310; Tawney v. United Rys. Co. of St. Louis, 262 Mo. 602; Bailey v. St. L. & S. F. Ry. Co., 20 S. W. (2d) 952; Luck v. Pemberton, 29 S. W. (2d) 197; McDonald v. K. C. Gas Co., *supra*.]

While it is true that section 7778, Revised Statutes 1929, referring to lights on motor vehicles places the duty upon the owner, at least, (Plannett v. McFall, 284 S. W. 850, 853), and perhaps upon the operator; but whether also upon the operator, we need not say for the reason that the Stinnett truck was being operated by its owner in this instance and Howell, having no right of control over the truck, but merely assisting in pushing it, was in no sense the operator thereof. [Rocco v. Tillia, 106 Pa. 597, 607, 608; Dewhirst v. Conn. Co., 96 Conn. 389; Wolcott v. Renault, 162 N. Y. S. 496; Kein v. Blackburn, 280 S. W. 1046; 42 C. J., p. 1074.] While it is apparent that the statute has no reference to a person in a position such as Howell was in this case, yet, we do not think that plaintiff's instruction necessarily submits statutory negligence.

There is no contention by the appellant that its instruction in the nature of a demurrer to the evidence should have given and it concedes that plaintiff made out a case. In view of the fact that the jury found in favor of the plaintiff under the instructions, it necessarily found that there was no lighted tail light upon the Stinnett truck and, it being conceded in the testimony that Howell knew of the condition as to the rear light, whatever it was and, even if it had not so conceded, in view of the instructions given on both sides on that question, the jury was authorized to find defendants guilty of common-law negligence in assisting in pushing the truck, upon the highway, such truck being in a condition which the statute describes to be unlawful. It is not our intention to intimate that persons, occupying the position that defendants did in the pushing of the truck in question, would be guilty of negligence because they failed to discover the absence of a lighted rear light thereon for, if the matter were before us it might possibly be argued, with effect, that they could have assumed that the owner of the truck had complied with the statute (see Wurl v. Watson, 228 Pac. 43 (Calif.); Lovett v. Gill, 20 Pac. (2d) 1070 (Ore.); Roederer's Admx. v. Gray, 69 S. W. (2d) 998 (Ky.), and hence defendants would not be liable unless they had reason to believe that

there was no lighted rear light upon the truck. It is not necessary to pass upon this matter for the reason that, in view of the concession made by appellant, it does not arise.

It is insisted that the court erred in allowing plaintiff's counsel to interrogate the jury panel on *voir dire* examination. It appears that the appellant carried insurance with the Central West Casualty Company. In this connection, over defendants' objection, inquiry was made of the members of the jury panel as to any business connection they might have with the Central West Casualty Company. Defendants introduced in evidence the affidavit of one Smith, who stated therein that he was special deputy commissioner of insurance for the State of Michigan and that he was custodian and manager of the Central West Casualty Company by virtue of his appointment to both positions by the Commissioner of Insurance of the State of Michigan under the authority conferred upon the Commissioner by the Insurance Code and Laws of that State; that affiant had been appointed custodian of the Central West Casualty Company by order of the Wayne Circuit Court of Michigan in the proceedings entitled "Charles E. Gauss, Commissioner of Insurance, Plaintiff, v. Central West Casualty Company, and that affiant had personally made a careful examination of the records of the Central West Casualty Company and that it had no record of any stockholder being a resident of Jackson County, Missouri; that the company maintained no office and had no employees in said county."

It appears that this cause was not only defended by the attorneys for the National Refining Company but also by the attorneys for the Central West Casualty Company. One of the attorneys for the latter made the following statement: "I wish to make this statement under oath and that is that said company at this time has essentially concluded all the business that it has in this area and our office has handled all that business and to the best of my knowledge it has no claims pending on any policies except this particular claim at this time. All other litigation arising while it was doing business prior to August 4, 1933, has been concluded and disposed of and hence no basis for inquiring in regard to policies because all such matters have been adjusted and concluded."

As before stated, the court overruled the objection and permitted the attorneys for plaintiff to question the jury panel as to any connection they might have with the Central West Casualty Company. The appellant contends that this was error for the reason that the inquiry was not in good faith but merely for the purpose of creating prejudice in the minds of the jurors by conveying to them the information that the appellant carried insurance; that the evidence produced by the appellant on this matter shows that there was little likelihood, if any, of the jury panel being connected, in any manner, with the insurance company. The affidavit of Smith and the statement of

the attorney for the Central West Casualty Company does not show that the Central West Casualty Company is insolvent. Nothing more is stated in relation to the financial situation of that company that may be inferred from the fact that it is in the hands of a special deputy commissioner of insurance for the State of Michigan. That it is a live concern is indicated by the fact that it had employed counsel who assisted in the defense of this action. Under all of the circumstances it cannot be said that plaintiff was not entitled to have the members of the jury panel answer under oath as to their qualifications. [Smith v. Lammert, 41 S. W. (2d) 791.] We think the court committed no error in reference to this matter.

We have examined the cases cited by defendant and find them not in point. We said nothing in Robinson v. McVey, 44 S. W. (2d) 238, inconsistent with this holding.

It is insisted that the verdict is excessive. The facts, in this connection, show that the collision was one of great force and violence, throwing plaintiff first, against the windshield and dash board, then, back against the seat, the wooden base thereof being found after the collision to have been broken. Plaintiff was a large woman. She was taken in an automobile from the scene of the collision to her home, which was nearby in the City of Independence and Dr. Polk was called. While she testified that she was suffering from her back as well as her ankle and knee and a cut on her head, the condition of her back, as to pain, was evidently not of sufficient moment for her to have called the doctor's attention to it at that time. He treated the abrasions on her knee and the lacerations on her scalp and advised her to put heat on her ankle and to stay off of it for a few days. She remained in bed for three or four days and when she got up she did some of her housework. She testified: "I hobbled around the best I could and did part of it;" that her back kept getting worse and she could not stand on her feet; that she again called the doctor about seven weeks after the collision; that the doctor advised her to have an X-ray picture taken of her back, which was done. Plaintiff's medical testimony shows that the X-ray picture disclosed that she had a congenital defect in her back consisting of abnormality on both sides of the sacroiliac joint, in that, the fifth lumbar vertebra is attached to the ilium on the left side and the transverse process of the same vertebra had been attached or adhered to the right side which condition, the medical testimony on the part of plaintiff described as a "sacralization."

Plaintiff's medical testimony further shows that this sacralization has been "broken up" or "pulled loose" on the right side; that the ilium has slipped from its fastenings; that this condition of the breaking up of the adhesions is very serious in persons suffering from a congenital sacralization, such as we have described, and could have resulted in the severe pain and inability of the plaintiff to use her

back, which she testified to, and could have been caused by the collision. The medical testimony further shows that this "breaking up" condition is permanent and that an operation would be very serious. While there was evidence that it is not uncommon for persons with such congenital defect of the back going through life without any pain or inability, there is also testimony that such inability and pain would often appear in a person of plaintiff's age. However, plaintiff's medical testimony shows a "breaking up" of this congenital condition and she, herself, testified that she had never had any sickness, pain or trouble in her back prior to the collision in question. Plaintiff not only testified as to pain and inability to do her ordinary housework as well as formerly, but said that when she attempted to bend over she would fall; that she could not lower her arms from above her head to below her waistline. There was ample testimony for the jury's consideration as to whether plaintiff received a severe injury as a result of the collision.

There was testimony on the part of the defendant of a medical examiner for a life insurance company to which company plaintiff had applied for life insurance in 1936. He testified that she signed an application stating, in effect, that she had never had any serious illness or received any severe injury. However, plaintiff testified that she did not sign this application and that she told the doctor at the time the application was being made: "When he came to (the question) if I had a severe injury I hesitated and was going to tell him. I said, 'Well, I had an automobile accident in May, 1931, and it was severe,' and he said, 'Well have you recovered?' and I said 'Not fully.' He said 'It has been several years and you are up. We will just let that go, and I will say no.' "

It appears that the insurance company asked for an additional examination after the first was reported to it by the doctor; that this was on account of his discovery of some symptoms of heart trouble. The doctor testified that, in making the second examination, he had plaintiff do thirty bending exercises in one minute; that she did these without any difficulty or expression of pain. However, plaintiff denied that she did these exercises.

It was within the province of the jury to accept the evidence on the question of plaintiff's injuries in its most favorable light to her. In view of all of the circumstances, we cannot say that the verdict is such as would justify us in interfering with it. The judgment is affirmed. All concur.